O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| DENISE WILLIAMS, <br><br>    Plaintiff, <br><br>    v. <br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security, <br><br>    Defendant. | Case No. ED CV 13-1657-DFM <br><br> MEMORANDUM OPINION AND ORDER |

Plaintiff Denise Williams ("Plaintiff") appeals the denial of her applications for Social Security disability benefits. The Court concludes that the ALJ did not provide specific and legitimate reasons adequately supported by substantial evidence for rejecting the opinion of Plaintiff's treating psychiatrist. The ALJ's decision is therefore reversed and the matter is remanded for further proceedings consistent with this opinion.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

This is Plaintiff's second attempt to secure Social Security disability benefits; a prior set of applications were denied by an ALJ on September 26, 2007. Administrative Record ("AR") 13. Plaintiff filed the present applications

for Disability Insurance and Supplemental Security Income benefits on July 13, 2010, alleging disability beginning March 13, 2009. Id. After a hearing, the ALJ found that Plaintiff had severe impairments of affective disorder, obesity, and sickle cell anemia. AR 16. After finding that Plaintiff retained the residual functional capacity ("RFC") to perform light work with some additional limitations to accommodate for her mental impairment, the ALJ concluded that Plaintiff was not disabled because there was work available in significant numbers in the national and regional economies that she could perform. AR 17-22.

## II.
## ISSUES PRESENTED

The parties dispute whether the ALJ erred in assessing (1) the opinion of Plaintiff's treating psychiatrist, (2) Plaintiff's credibility, and (3) the statements of her mother and daughter.[1] See Joint Stipulation ("JS") at 4.

## III.
## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. The ALJ's findings and decision should be upheld if they are free from legal error and are supported by substantial evidence based on the record as a whole. 42 U.S.C. § 405(g); Richardson v. Perales, 402 U.S. 389, 401 (1971); Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007). Substantial evidence means such relevant evidence as a reasonable person might accept as adequate to support a conclusion.

---

[1] Because the Court concludes that the ALJ failed to provide specific and legitimate reasons for rejecting the opinion of Plaintiff's treating psychiatrist, the Court does not reach the other issues and will not decide whether either would independently warrant relief. Upon remand, the ALJ may wish to consider Plaintiff's other claims of error.

Richardson, 402 U.S. at 401; Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007). It is more than a scintilla, but less than a preponderance. Lingenfelter, 504 F.3d at 1035 (citing Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006)). To determine whether substantial evidence supports a finding, the reviewing court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1996). "If the evidence can reasonably support either affirming or reversing," the reviewing court "may not substitute its judgment" for that of the Commissioner. Id. at 720-21.

## IV.

## THE ALJ ERRED IN REJECTING THE OPINION OF PLAINTIFF'S TREATING PHYSICIAN

Plaintiff contends that the ALJ failed to provide specific and legitimate reasons supported by substantial evidence for not giving controlling weight to the opinion of Plaintiff's treating psychiatrist as expressed in forms completed in April 2011 and February 2012. JS at 4-5.

**A.   Background**

Plaintiff first sought treatment at the Victor Valley Behavioral Health Center in either early 2005 or late 2006. See AR 393, 395, 421. She returned to the clinic a few times in 2009. See AR 247-59. When she again returned in April 2010, she began to be treated by Dr. Dennis Payne, see AR 241-44, who continued to treat her through at least May 2013. See AR 413-14, 428; see generally AR 233-42, 308-17, 349-75, 377-87, 404, 406-11, 413-14.

On April 28, 2011, Dr. Payne completed a form in which he marked boxes indicating that Plaintiff had "[n]o useful ability to function" with respect to all but a handful of work-related abilities, such as "sustain an ordinary routine without special supervision," "make simple work-related decisions,"

3

and "accept instructions and respond appropriately to criticism from supervisors." AR 377-78. He noted that Plaintiff suffered from auditory and visual hallucinations and mood swings, broke things out of anger, and could be violent in the workplace. AR 378. He opined that Plaintiff would miss more than four days of work per month. Id.

On February 7, 2012, Dr. Payne wrote to the Social Security administration, noting that Plaintiff had been under his care for years, was "unable to work . . . in any employment setting," and would "most likely deteriorate." AR 395. He did not indicate any basis for this opinion in the letter. Id. That same day, Dr. Payne completed a form in which he indicated that Plaintiff's ability to carry on basic workplace activities – such as carrying out simple and complex instructions, maintaining concentration, adhering to a schedule, and responding appropriately to changes in work setting – was poor. AR 394. He opined that Plaintiff would not be able to complete a normal workday and workweek without interruptions from psychological symptoms. Id.

On June 25, 2013, Dr. Payne wrote to the Appeals Council, noting that Plaintiff continued to receive treatment for schizoaffective disorder, had a Global Assessment Functioning ("GAF") score of 45,[2] was "unable to work," and would "most likely rapidly deteriorate in any work setting in the next

---

[2] A GAF score of 41 to 50 indicates serious symptoms or a serious impairment in social or occupational functioning. See Diagnostic and Statistical Manual of Mental Disorders 34 (revised 4th ed. 2000). The Commissioner has declined to endorse GAF scores, 65 Fed. Reg. 50764-65 (Aug. 21, 2000) (GAF score "does not have a direct correlation to the severity requirements in our mental disorders listings"), and the most recent edition of the DSM "dropped" the GAF scale, citing its lack of conceptual clarity and questionable psychological measurements in practice. Diagnostic and Statistical Manual of Mental Disorders 16 (5th ed. 2012).

twelve months." AR 428.

The ALJ found that Plaintiff had the severe impairment of affective disorder. AR 16. After finding that Plaintiff's impairment did not meet or equal Listing 12.04, the ALJ concluded that Plaintiff has the residual functional capacity ("RFC") to perform light work if she was further limited to "non-public, simple, routine, repetitive tasks" with "only occasional contact with coworkers and supervisors." AR 17. In reaching this conclusion, the ALJ addressed Dr. Payne's opinion as follows:

> [T]he undersigned has considered, but does not give considerable weight to, the opinion of the treating source, Dr. Dennis Payne . . . . In this case, the opinion of this treating source is not given controlling weight because the psychiatrist does not document significant positive objective clinical or diagnostic findings to support the assessed functional limitations and because these extreme functional limitations are inconsistent with the record as a whole. . . . [¶] Dr. Payne did not document positive objective clinical or diagnostic findings to support his functional assessment. Dr. Payne's opinion is not given great weight because, despite the length of time he treated the claimant, his assessment of functional limitations is not supported with objective evidence and his assessment is not consistent with his own treatment records or the record as a whole.

AR 20.

In contrast, the ALJ gave "great weight" to a December 2010 opinion of Dr. S. Khan, a state-agency consulting examiner. Id.; see AR 320-36. The ALJ noted that Dr. Khan "concluded the claimant should be limited to simple repetitive tasks." Id. The ALJ found "nothing of record to contradict [Dr. Khan's] opinion" with respect to Plaintiff's RFC and that Dr. Khan's

assessment was "reasonable and consistent with the objective medical evidence." Id.

**B.    Applicable Law**

Three types of physicians may offer opinions in Social Security cases: those who directly treated the plaintiff, those who examined but did not treat the plaintiff, and those who did not treat or examine the plaintiff. See 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996). A treating physician's opinion is generally entitled to more weight than that of an examining physician, which is generally entitled to more weight than that of a non-examining physician. Lester, 81 F.3d at 830. Thus, when a treating doctor's opinion is not contradicted by another doctor, it may be rejected only for clear and convincing reasons. Id. When a treating doctor's opinion is contradicted by another doctor, the ALJ must provide specific, legitimate reasons based on substantial evidence in the record for rejecting the treating doctor's opinion. Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007); Lester, 81 F.3d at 830-31. However, "[t]he opinion of a non-examining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician"; such an opinion may serve as substantial evidence only when it is consistent with and supported by other independent evidence in the record. Id. at 831; see Morgan v. Comm'r of the Soc. Sec. Admin., 169 F.3d 595, 600 (9th Cir. 1999). However, "[t]he ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002); accord Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001).

///

///

C.     Analysis

As detailed above, the ALJ offered two reasons for rejecting Dr. Payne's opinion. First, the ALJ found that Dr. Payne's opinion was "not supported by objective evidence," noting Dr. Payne's failure to "document significant positive objective clinical or diagnostic findings to support the assessed functional limitations." AR 20. Second, the ALJ found that Dr. Payne's opinion was "not consistent with his own treatment records or the record as a whole." Id.

Although an ALJ may discredit a treating physician's opinion where that opinion is unsupported by objective medical findings, see Batson v. Comm'r of Soc. Sec. Admin, 359 F.3d 1190, 1195 (9th Cir. 2004), the ALJ's rejection of Dr. Payne's opinion as inadequately supported by objective evidence was legally insufficient. Psychiatric impairments are not as amenable to substantiation by objective laboratory testing as are physical impairments. Hartman v. Bowen, 636 F. Supp. 129, 131-32 (N.D. Cal. 1986); see also Heller v. Doe by Doe, 509 U.S. 312, 322 (1993) (noting that "diagnosis of mental illness is difficult"). The diagnostic techniques necessarily will be less tangible, Lebus v. Harris, 526 F. Supp. 56, 60 (N.D. Cal. 1981), and mental disorders cannot be "ascertained and verified" like physical ailments, Hartman, 636 F. Supp. at 132. Thus, in the case of mental illness, clinical and laboratory data may consist of "the diagnoses and observations of professional psychiatrists and psychologists." Id.; see also Bilby v. Schweiker, 762 F.2d 716, 719 (9th Cir. 1985) (reversing ALJ's decision to disregard psychiatrists' opinions and emphasizing that "[d]isability may be proved by medically-acceptable clinical diagnoses, as well as by objective laboratory findings" (internal quotation marks omitted)); Yang v. Astrue, No. 06-2658, 2008 WL 802321, at *5 (E.D. Cal. Mar. 25, 2008). Indeed, the Commissioner's own regulations recognize the validity of clinical findings in mental-status examinations. See 20 C.F.R.

§ 404.1513(b)(2).

Here, Dr. Payne's diagnoses and opinion were based on his treatment and observations of Plaintiff for more than three years. The record shows that, in addition to Dr. Payne's regular visits with Plaintiff, Dr. Payne and his colleagues occasionally performed fuller assessments of her functioning, see AR 241-46, 255-59. The ALJ did not explain how Dr. Payne's regular, personal observations of Plaintiff over a three-year period and his April 28, 2011 and February 7, 2012 evaluations do not constitute evidence of "objective clinical or diagnostic findings."

In fact, there is significant evidence of observations made by Dr. Payne to support his opinions. For example, Dr. Payne's February 2012 finding that Plaintiff could not complete a normal workweek without interruptions from psychological symptoms is consistent with (1) his repeated observation that she was hearing voices, AR 238, 239, 240, 312, 349, 353, 354, 355, 363, 367, 370, 371; and (2) his repeated observation that she was having visual hallucinations such as seeing shadows, AR 235, 238, 240, 357, 363, 370, 397. Likewise, Dr. Payne's April 2011 findings that Plaintiff could not get along with co-workers or peers without exhibiting behavioral extremes and could be violent in the workplace is consistent with (1) his observation in September 2010 that she became so upset that 911 had to be called, AR 311; (2) his notation in April 2011 that she had punched a window with her fist, AR 363; (3) his notation in November 2010 about an episode where Plaintiff had to be hospitalized after threatening her 16 year-old son, AR 373. Finally, Dr. Payne's finding that Plaintiff was not able to maintain concentration, attention, and persistence is consistent with his observations that (1) she was severely distracted, AR 397; (2) her memory was impaired, id.; and (3) she reported being "confused," AR 355.

///

Turning to the ALJ's second basis for rejecting Dr. Payne's opinion, the Court finds that although an ALJ may reject a treating physician's opinion when that opinion is inconsistent with the physician's treatment reports, see Rollins v. Massanari, 261 F.3d 853, 856 (9th Cir. 2001), the record does not support the ALJ's finding that Dr. Payne's opinion was not supported by his treatment notes. If anything, as the citations in the preceding paragraph demonstrate, Dr. Payne's treatment notes are consistent with his finding that Plaintiff was not capable of working.

Opinions of treating physicians are generally given more weight than the opinions of other physicians because treating physicians "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). Based on the length of the treatment relationship and Dr. Payne's experience with Plaintiff, Dr. Payne had the broadest range of knowledge regarding Plaintiff's mental condition, which knowledge is supported by the treatment records. See id.; see also Lester, 81 F.3d at 833 ("The treating physician's continuing relationship with the claimant makes him especially qualified . . . to form an overall conclusion as to functional capacities and limitations, as well as to prescribe or approve the overall course of treatment."). By concluding that there was little, if any, evidence of "objective clinical or diagnostic findings" in Dr. Payne's treating records, the ALJ ignored evidence in the record and also failed to consider the unique nature of Dr. Payne's treatment relationship with Plaintiff. See Reddick, 157 F.3d at 722-23 (finding that it is impermissible for the ALJ to develop an evidentiary basis by "not fully accounting for the context of materials or all

parts of the testimony and reports"); Sprague v. Bowen, 812 F.2d 1226, 1230 (9th Cir. 1987) ("The rationale for giving greater weight to a treating physician's opinion is that he is employed to cure and has a greater opportunity to know and observe the patient as an individual."); Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988) ("The subjective judgments of treating physicians are important, and properly play a part in their medical evaluations.").

Because the record, including Dr. Payne's treatment notes, provides substantial evidence consistent with the doctor's opinion that Plaintiff is incapable of work, the Court concludes that the ALJ's finding to the contrary was legal error. Moreover, the ALJ's finding that Dr. Payne's opinion was inadequately supported by objective diagnostic or clinical evidence ignores the importance of his subjective assessments of Plaintiff on a relatively regular basis over the course of years.

Further, having rejected Dr. Payne's opinion, the ALJ relied upon the 2010 opinion of a state-agency doctor who had never examined Plaintiff, let alone made any diagnostic or clinical findings of his own. Even if the ALJ correctly found that Dr. Khan's opinion was "reasonable and consistent with the objective medical evidence," and thus constituted substantial evidence of Plaintiff's mental-health status at that time, Tonapetyan, 242 F.3d at 1149, Dr. Khan's review included only records up to and including Plaintiff's November 16, 2010 appointment. See AR 335-36. Dr. Khan therefore did not know and could not opine about the fact that Plaintiff continued to suffer serious symptoms such as hallucinations and violent outbursts throughout 2011 and early 2012, despite regular visits with Dr. Payne and greater compliance with her prescriptions. See, e.g., AR 349, 353, 354, 355, 357, 363, 367, 370, 371, 397.

///

Thus, to the extent that the ALJ relied solely on Dr. Khan's opinion in assessing Plaintiff's symptoms through early 2012, that was error. See Calkins v. Astrue, No. 08-2385, 2010 WL 1286741, at *3 (E.D. Cal. Mar. 29, 2010) (error to reject treating doctor's later opinion in favor of opinions of state-agency physicians, who had no opportunity to review records evidencing Plaintiff's deteriorating psychiatric condition). Having rejected the sole medical opinion relating to Plaintiff's mental health after November 2010, it was incumbent upon the ALJ to seek additional medical opinion evidence to enable proper evaluation of Plaintiff's mental impairments. See Tonapetyan, 242 F.3d at 1150 (explaining that when "record is inadequate to allow for proper evaluation of evidence," ALJ has duty to develop record); Delorme v. Sullivan, 924 F.2d 841, 849 (9th Cir. 1991) (noting that duty is "especially important" when plaintiff suffers from a mental impairment); cf. Sivilay v. Comm'r of Soc. Sec., 32 F. App'x 911, 914-15 (9th Cir. 2002) (remanding for further medical opinion evidence appropriate when ALJ's rejection of statements from claimant, her husband, and her treating psychiatrist left "record that did not offer especially firm ground for a decision"). In finding Plaintiff "functional" and attributing her severe symptoms merely to her having run out of medication, AR 19, the ALJ appears instead to have improperly substituted his own judgment for that of the medical professionals. See Miller v. Astrue, 695 F. Supp. 2d 1042, 1048 (C.D. Cal. 2010); Rohan v. Chater, 98 F.3d 966, 970-71 (7th Cir. 1996).

**D.     A Remand for Further Proceedings Is Appropriate**

Where, as here, the Court finds that the ALJ improperly discredited medical testimony, the Court has discretion as to whether to remand for further proceedings. See Harman v. Apfel, 211 F.3d 1172, 1175-78 (9th Cir. 2000). Where no useful purpose would be served by further administrative proceedings, or where the record has been fully developed, it is appropriate to

exercise this discretion to direct an immediate award of benefits. Id. at 1179 (noting that "the decision of whether to remand for further proceedings turns upon the likely utility of such proceedings"); see also Garrison v. Colvin, --- F.3d ---, 2014 WL 3397218, at *20-*21 (9th Cir. July 14, 2014) (noting that this doctrine applies to medical opinion testimony).

A remand is appropriate, however, where there are outstanding issues that must be resolved before a determination of disability can be made and it is not clear from the record that the ALJ would be required to find the claimant disabled if all the evidence were properly evaluated. Bunnell v. Barnhart, 336 F.3d 1112, 1115-16 (9th Cir. 2003); see also Connett v. Barnhart, 340 F.3d 871, 876 (9th Cir. 2003). Here, remand is appropriate for the ALJ to fully and properly consider the opinion of Plaintiff's treating physician, solicit further medical opinion evidence, if necessary, and determine whether the medical opinion evidence supports a finding of disability.

## V.
## CONCLUSION

For the reasons stated above, the decision of the Social Security Commissioner is REVERSED and the action is REMANDED for further proceedings consistent with this opinion.

Dated: August 25, 2014

_____
DOUGLAS F. McCORMICK
United States Magistrate Judge